Jingjing Zhou v Youbi Capital (Cayman) GP (2026 NY Slip Op 50321(U))

[*1]

Jingjing Zhou v Youbi Capital (Cayman) GP

2026 NY Slip Op 50321(U)

Decided on March 2, 2026

Supreme Court, Westchester County

Jamieson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 2, 2026
Supreme Court, Westchester County

Jingjing Zhou and HONGTAO (JASON) QIAO, Plaintiffs,

againstYoubi Capital (Cayman) GP, YAOFEI (DAVID) CHEN, 
 HYEJIN LEE, and CHEN LI, Defendants.
YOUBI CAPITAL (CAYMAN) GP, Counterclaim-Plaintiff,
againstJINGJING ZHOU and HONGTAO (JASON) QIAO, BBSHARES CAPITAL MANAGEMENT LIMITED, and 
 BB MATRIX HOLDING PTE LTD., Counterclaim-Defendants.

Index No. 62808/2021

Kelley Drye et al.Attorneys for Plaintiffs/Counterclaim-Defendants3 World Trade Center175 Greenwich StreetNew York, New York 10007Elsberg Baker et al. 
Attorneys for Defendant/Counterclaim Plaintiff 
1 Penn PlazaNew York, NY 10119

Linda S. Jamieson, J.

The following papers numbered 1 to 6 were read on this motion:
Papers     
NumberedNotice of Motion, Affirmations and Exhibits 1Memorandum of Law 2Affirmation and Exhibits in Opposition 3Memorandum of Law in Opposition 4Reply Affirmation and Exhibit 5Reply Memorandum of Law 6
The Court has before it defendant Youbi Capital (Cayman) GP ("Youbi")'s motion for sanctions against plaintiffs and counterclaim defendants arising out of a discovery issue.[FN1]

BackgroundPlaintiffs commenced this action in 2021, arising from a dispute concerning the parties' joint venture in creating Youbi to manage investments in cryptocurrency assets. The complaint essentially alleges that while plaintiffs substantially contributed to Youbi's growth from inception to a net asset value of nearly $300 million, the individual defendants have wrongfully deprived plaintiffs of Youbi's profits and have engaged in acts of fraud, breach of fiduciary duty, and conversion. 
In response, Youbi filed counterclaims, including misappropriation of trade secrets; breach of confidence under Cayman law; breach of fiduciary duty under Cayman law; aiding and abetting breach of fiduciary duty; conversion; unjust enrichment; and declaratory judgment. In January 2023, the Court denied plaintiffs' motion to dismiss these counterclaims.
In this motion, Youbi asserts that although plaintiffs left Youbi in November 2018, they improperly continued to access Youbi's centralized document database (the "ShareDrive") and downloaded thousands of documents therefrom, including Youbi's trade secrets and confidential strategic materials with information on how to successfully operate a cryptocurrency investment fund.[FN2]
According to movant, plaintiffs "engaged with Youbi files on March 28, April 15, and April 27, 2022, as well as March 15, April 11, June 1, June 26, June 27, and August 24, 2023," and used "their unauthorized access to documents from Youbi Share Drive, including a document titled "GP-ELP-NV by project and wallet info.xlsx," for the purposes of this litigation." Youbi contends that "Because of Plaintiffs' deliberate failure to comply with the Court's orders and their misrepresentations regarding their inspection of, and the location of, [*2]Youbi files, Youbi and this Court have been deprived of forensic evidence needed to fully understand where Youbi's stolen files were ultimately moved, or how those files were used. This deliberate misrepresentation and discovery misconduct alone warrants severe sanctions." As a result, it seeks "an order imposing adverse inferences to remedy the prejudice upon Plaintiffs, monetary penalties under 22 NYCRR § 130-1.2, and awarding Defendants their attorneys' fees and costs."
In March 2023, the Discovery Referee appointed by the Court directed plaintiffs to produce an electronic audit log showing what they did with the files from the ShareDrive. Plaintiffs thereafter produced a master file table ("MFT") for the ShareDrive documents on Zhou's laptop. Youbi contends that this was "an incomplete MFT," and that there "various other folders on Zhou's laptop containing Youbi files," but that plaintiffs directed "selective imaging" and "concealed other folder locations and limited Youbi's ability to fully trace Plaintiffs' misappropriation." In response, plaintiffs contend that while they did only produce one file, "On August 5, 2022, Plaintiffs produced all documents downloaded from the ShareDrive, with metadata." Plaintiffs explain that the other files were "copies for purposes of litigation (i.e., work product)" and that they produced "the original set of files as downloaded" but "not any work-product versions of the documents."
In August 2024, the Court entered an Order (that the parties drafted and the Court so-Ordered) directing plaintiffs to produce an audit log (the "Audit Log") from a forensic image of Zhou's computer, which focused upon 42 ShareDrive files that were stored there. The Order states that "Plaintiffs will use the following five forensic artifact types from a forensic image of Plaintiff Zhou's computer for purposes of developing an audit log ('Audit Log') of the ShareDrive files stored on Plaintiff Zhou's computer: 1) shell bags, 2) jump lists, 3) LNK, 4) web history, and 5) a connected USB device analysis."[FN3]
There was an option to obtain eight additional files but, according to plaintiffs (and apparently unrebutted by movant), Youbi did not take advantage of this option.[FN4]

In February 2025, plaintiffs produced the Audit Log. According to movant, "Although in response to Defendants' repeated requests for all relevant devices Plaintiffs repeatedly maintained that only one device — a laptop belonging to Zhou — was relevant, the analysis of the Audit Log revealed that Plaintiffs concealed the existence of another relevant device — a removable drive (the 'Removable Drive'). When Defendants' counsel inquired why this device was never disclosed, Plaintiffs' counsel suggested that it was 'not relevant' because it contained 'copies' of the documents downloaded from the Share Drive." 
Youbi further contends that at a Court conference on July 2, 2025, "the Court ordered an inspection of the Removable Drive." This is not quite accurate. A review of the transcript of that Court appearance shows that the Court ordered something far more limited: all that the [*3]Court ordered was a review of two files on the "My Passport drive," which appears to be the same thing as the Removable Drive. 
Approximately one month later, Youbi's counsel requested "that the Court compel Plaintiffs to complete the court-ordered forensic inspection of Zhou's removeable drive. At the July 2, 2025 conference, Plaintiffs were ordered to conduct a forensic inspection of a previously-unidentified removeable drive aimed at two Youbi Capital files that exist on the device." 
After the Court directed the parties to the Discovery Referee for this dispute (and others), counsel for plaintiffs wrote to the Discovery Referee that "during the July 2, 2025 compliance conference, Plaintiffs consented to produce data as to five forensic artifacts for two specific files, Defendants agreed, and the Court ordered it. But on July 11, Defendants changed their demand, claiming that they needed (in addition to artifacts) a 'master file table' of 'the entire' drive. Plaintiffs informed Defendants that this wildly exceeded the scope of the July 2 order. Still, in good faith, Plaintiffs had a file table rendered per Defendants' specifications (including all requested metadata and hash data), but limited to the two file names identified, per the Court's order. But this has not satisfied Defendants, and they have reiterated their new demand for the 'entire' drive. This is plainly far beyond what Defendants previously sought or what the Court ordered. . . ."
Youbi then asserted to the Discovery Referee that
the procedural history of the inspection dispute and the Court's recent order establishes that Plaintiffs were obligated to complete a forensic inspection as to all Youbi files existing on the device — not just the two files disclosed to date. . . . [W]hen Plaintiffs conducted a forensic inspection of Zhou's computer, the first step was producing an MFT of all Youbi files existing on the device. Plaintiffs now concede that the inspection of the USB drive must "mimic" the inspection of Zhou's computer. Therefore, the inspection of Zhou's Removeable Drive must cover all Youbi files— just like the inspection of Zhou's computer. Plaintiffs have not provided any practical reason for why they should be restricted to just two files for the inspection of Zhou's Removeable Drive. Instead, they hide behind a skewed interpretation of the July 2, 2025 court conference. . . . The Court unequivocally granted Defendants' request for an inspection as to the Youbi files existing on the device, but did not restrict the assessment to just two files if other files exist. Given that Plaintiffs now concede more Youbi files exist on Zhou's Removable Drive, inspection of all Youbi files on the Removable Drive is necessary. Second, even if Your Honor limits inspection to the two files that were known to Defendants, the proper output is an unaltered MFT. . . . As set forth in Defendants' forensic expert report, the refusal to produce a customary MFT in response to a forensic inspection "suggest[s] efforts to limit forensic scrutiny or conceal file-level activity."Naturally, plaintiffs disagree with this characterization. Instead, they assert that "Plaintiffs have produced the ShareDrive files as they were downloaded by Plaintiffs. Defendants' expert, having reviewed the production, explained that 'Plaintiffs downloaded much of (if not the entirety of) Youbi's Share Drive.' Defendants know that because they have the 2023 MFT and Plaintiffs' productions of the files with its metadata. And Plaintiffs have consistently acknowledged in testimony, counsel representations, and even productions that they copied and used some of those files for purposes of this litigation, in many instances creating [*4]new work product. That Plaintiffs copied the documents they downloaded in 2021 and subsequently accessed them is not in dispute."
In response, Youbi asserts that "plaintiffs do not dispute that their June 2023 production — which they represented to Defendants and the Court as a true 'MFT' covering all Youbi downloads — deliberately excluded all download locations that went beyond a single, hand-curated folder. Plaintiffs likewise do not dispute that because of that conscious omission, critical metadata probative of misappropriation, including numerous instances of user engagement with Youbi files, was concealed from Youbi." As a result, Youbi seeks sanctions "to remediate Plaintiffs' repeated and willful noncompliance, concealment of relevant evidence, and repeated lies to obstruct Youbi's investigation. The requested remedies are tied directly to Plaintiffs' misconduct: an adverse inference that the withheld evidence would reveal additional instances of Plaintiffs' active engagement with Youbi files and exfiltration to other devices, along with statutory penalties for frivolous conduct, and reasonable attorney's fees incurred in addressing these violations."
AnalysisYoubi seeks sanctions pursuant to CPLR §§ 3126 and 3103,[FN5]
22 NYCRR § 130-1.1, common law, and the Court's inherent authority. As the Second Department has explained recently, "Pursuant to CPLR 3126, a court may impose discovery sanctions, including the striking of a pleading, where a party refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed. The nature and degree of a penalty to be imposed under CPLR 3126 for discovery violations is addressed to the court's discretion. However, before a court invokes the drastic remedy of striking a pleading, there must be a clear showing that the failure to comply with court-ordered discovery was willful and contumacious. Willful and contumacious conduct may be inferred from a party's repeated failure to comply with court-ordered discovery, coupled with inadequate explanations for the failures to comply, or a failure to comply with court-ordered discovery over an extended period of time." Casillas v. Moore, 243 AD3d 878, 878—79, 243 N.Y.S.3d 516, 518 (2d Dept. 2025). See also Korsinsky & Klein, LLP v. FHS Consultants, LLC, 214 AD3d 961, 964, 187 N.Y.S.3d 71, 74 (2d Dept. 2023) (to impose sanctions, there must be a "showing of a clear pattern of willfulness and contumacious conduct necessary to justify such sanctions," and there must be an "indication that the plaintiff repeatedly failed to comply with court-ordered discovery or failed to comply with court-ordered discovery over an extended period of time.").
Movant has not made such a showing here to warrant the sanctions it seeks. First, there was never a Court Order requiring plaintiffs to provide all of the information that Youbi seeks, let alone a clear pattern of plaintiffs repeatedly ignoring Court-ordered discovery. Indeed, as set forth above, the only directive on this subject that the Court made was for plaintiffs to provide data on the two files identified on the Record. Nor has Youbi made a showing of a clear pattern of willful and contumacious conduct. These motions make clear — essentially for the first time — that the parties had a fundamental difference in their interpretation of their obligations as ordered [*5]by the Court and the Discovery Referee.
Under 22 NYCRR § 130-1.1, "Conduct is frivolous if (1) it is completely without merit in law or fact and cannot be supported by a reasonable argument for the extension, modification, or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false. Although the advancement of a meritless position may serve as the basis for a finding of frivolity, the standard for such a showing is high: the rule provides that a position will be deemed frivolous only where it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law. A party seeking the imposition of a sanction or an award of an attorney's fee pursuant to 22 NYCRR 130—1.1(c) has the burden of proof." Hossain v. Hossain, 243 AD3d 894, 896—97, 246 N.Y.S.3d 429, 432—33 (2d Dept. 2025). See also Contreras v. Jimmy's Auto Top, 242 AD3d 698, 699, 243 N.Y.S.3d 704, 706—07 (2d Dept. 2025) ("A court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court ... costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct. The party seeking sanctions has the burden to demonstrate that its opponent's conduct was frivolous within the meaning of 22 NYCRR 130—1.1(c).").
Although Youbi contends that "plaintiffs' knowing concealment of relevant discovery and affirmative misrepresentations fall squarely within the rule's definition of frivolous conduct," the Court disagrees. The Court is not convinced, at this juncture, that plaintiffs (and their counsel) were as crafty and disingenuous as Youbi believes. Given the complexities of the discovery issues, there are certainly examples of misunderstandings, but the Court does not find that they rise to the level necessary to warrant sanctions. Accordingly, the Court denies the motion for sanctions in its entirety.
The foregoing constitutes the decision and order of the Court.[FN6]

Dated: March 2, 2026White Plains, New YorkHON. LINDA S. JAMIESONJustice of the Supreme Court

Footnotes

Footnote 1:Counterclaim defendants BBShares Capital Management Limited ("BBShares") and BB Matrix Holding Pte Ltd. ("BB Matrix") are presently unrepresented, as their counsel withdrew in early 2025. 

Footnote 2:Although Youbi alleges that "Plaintiffs' access to Youbi's books and records was terminated" when they left and that this was a "secure" repository, this was clearly not the case. There is no allegation that plaintiffs engaged in any computer hacking to obtain access. In fact, plaintiffs state that "There is no evidence that Plaintiffs accessed any documents they were technically blocked from accessing. . . . Plaintiffs could not (and did not) access files to which they lacked access and were only able to access files to which Defendants' settings allowed their access."

Footnote 3:The Court notes that neither party explains these technical terms in their papers. In future, counsel are advised that it is good practice to explain technical terms or jargon to a Court, which cannot have the depth of knowledge as the parties who are steeped in it, given the vast array of cases a Court handles.

Footnote 4:Plaintiffs appear to point to this as evidence of their good faith and Youbi's belated/manufactured outrage.

Footnote 5:This section governs the use of protective orders relating to disclosure devices, and is generally inapplicable here. To the extent that Youbi claims that plaintiffs stole information from the ShareDrive, this alleged theft is a subject of Youbi's counterclaims and is best addressed in that context.

Footnote 6:All other arguments raised on these two motions and all materials submitted by the parties in connection therewith, including the arguments raised and the materials submitted at oral argument, have been considered by this Court, notwithstanding the specific absence of reference thereto.